# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRUCE SCHOENFELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 15 C 267 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bruce Schoenfeld ("Schoenfeld") appeals from an ALJ's decision denying his claim for disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties then filed cross-motions for summary judgment on whether the ALJ's decision is supported by substantial evidence. For the reasons that follow, the Court affirms the ALJ's decision to deny disability benefits.

## I.    Background

Schoenfeld was born on July 15, 1954 and has a history of degenerative disc disease, coronary artery disease, hernias and headaches. Schoenfeld has a college degree and previously worked as an electronics technician, electronics consultant, and a repair center manager in electronics. Schoenfeld alleges he became totally disabled on June 29, 2012 because of cervical degenerative disc disease, radiculopathy, spinal stenosis, headaches, coronary artery disease, lumbar degenerative disc disease, hernias, and kidney disease.

Under the standard five-step analysis used to evaluate disability, the ALJ found that Schoenfeld had not engaged in substantial gainful activity since June 29, 2012, the alleged onset date (step one); his degenerative disc disease and coronary artery disease were severe impairments (step two); but that his degenerative disc disease and coronary artery disease did not qualify as a listed impairment (step three). The ALJ determined that Schoenfeld retained the

residual functional capacity (RFC) to perform light work except that he is limited to frequent handling, and he can only occasionally balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs. He can only occasionally reach overhead, and he must avoid concentrated exposure to hazards, extremes and humidity. Given this RFC, the ALJ concluded that Schoenfeld was able to perform his past relevant work as a repair center manager as it is generally performed (step four). The Appeals Council denied Schoenfeld's request for review on November 14, 2014. Shoenfeld now seeks judicial review of the final decision of the Commissioner, which is the ALJ's ruling. O'Connor-Spinner v. Astrue, 627F.3d 614, 618 (7th Cir. 2010).

## II.   Discussion

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting

Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). An ALJ's credibility determination should be upheld unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Schoenfeld's claim at step four, finding that Schoenfeld retains the residual functional capacity to perform his past relevant work as a repair center manager. Schoenfeld raises four main challenges to the ALJ's decision: (1) the ALJ failed to make a proper step three listing determination; (2) the ALJ erred in failing to accord controlling weight to the opinion of his treating internist; (3) the ALJ's RFC assessment failed to take into account all of Schoenfeld's limitations; and (4) the RFC was premised upon a negative credibility finding that is patently wrong. The Court rejects each of these challenges and finds that the ALJ's decision is supported by substantial evidence.

### A. The Step Three Determination

Schoenfeld asserts that the ALJ erred at step three when he determined, without any analysis, that Schoenfeld did not have an impairment that meets or equals a Listing. Under a theory of presumptive disability, a claimant is eligible for benefits at step three if he has a condition that meets or equals an impairment found in the Listing of Impairments. Maggard v. Apfel 167 F.3d 376, 379 (7th Cir. 1999). The listings specify the criteria for impairments that are considered presumptively disabling. Id. at 380. A claimant may also demonstrate presumptive disability by

showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. Id. In making a step three determination, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004).

At step three, the ALJ found that Schoenfeld's back and heart conditions did not meet or equal Listings 1.04 and 4.04. To support his conclusion, the ALJ stated:

> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. The undersigned also considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(f), 416.927(f) and Social Security Ruling 96-6p). In reaching this finding, the undersigned considered all of the listed impairments, but particularly Listings 1.04 and 4.04.

(R. 19). The ALJ also noted that the medical expert, Bernard Stevens, M.D., testified that Schoenfeld does not meet or equal any listed impairment. (R. 24, 36-37).

Although the ALJ's step three analysis was cursory, the ALJ specifically identified Listings § 1.04 (disorders of the spine) and § 4.04 (ischemic heart disease) and Schoenfeld has not shown that his conditions satisfy Listings 1.04 or 4.04. At step three, Schoenfeld had the burden to show that his impairments met or equaled a listing by showing his impairments "satisf[ied] all of the various criteria specified in the listing." Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006). "In order to show that reversal is in order, a claimant is required to identify the medical evidence showing that he or she would have satisfied the Step 3 criteria if the ALJ had considered the relevant issues." Heuschmidt v. Colvin, 2015 WL 7710368, at *3 (N.D. Ill. Nov. 30, 2015). Schoenfeld has failed to do so here.

Listing 1.04 requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord with: nerve root compression causing motor loss accompanied by sensory or reflex loss; spinal arachnoiditis; or lumbar spinal stenosis resulting in an inability to ambulate effectively. Schoenfeld's briefs discuss none of the requirements for Listing 1.04 and do not specify which

subsection(s) of Listing 1.04 (Listing 1.04A, B, or C) he satisfies. Listing 4.04 sets forth several different criteria for showing ischemic heart disease. Schoenfeld does not specify which subsection of Listing 4.04 he contends that he meets or equals and offers no analysis of the criteria required to meet the requirements of 4.04. Schoenfeld does not explain how the ALJ's finding that he did not meet Listings 1.04 or 4.04 is inconsistent with the medical evidence or point to any evidence that he met Listings 1.04 or 4.04. The Court cannot do the analysis and make the argument for him. Schoenfeld has thus not shown how his back and heart impairments satisfy all the criteria of the listings. Because the ALJ's failure at step three to be more comprehensive amounts to harmless error, a remand will not be granted on this issue. Cain-Wesa v. Astrue, 2012 WL 2160443, at *17 (E.D. Wis. June 13, 2012) (holding "plaintiff fails to explain how her impairment(s) alone or in combination, medically equal a Listing or even to identify a particular Listing she might equal. Therefore, the ALJ's failure to say more on medical equivalence was, at most, harmless error.").

Substantial evidence supports the ALJ's conclusion that Schoenfeld's impairments did not met or equal Listings 1.04 and 4.04. At step three, the ALJ reasonably relied on the opinions of the state agency consulting physicians, Drs. Reynaldo Gotanco and Vicya Madala, whose opinions the ALJ gave significant weight. (R. 19, 23); Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004). Drs. Gotanco and Madala reviewed the medical record and submitted Disability Determination and Transmittal Forms concluding that Schoenfeld's impairments did not meet or equal any listing through May 7, 2013 and September 12, 2013, respectively. (R. 60-80). The Disability Determination and Transmittal forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" Scheck, 357 F.3d at 700; Steward v. Bowen, 858 F.2d 1295, 1299 (7th Cir. 1988). Furthermore, the ALJ properly relied on the testimony of the ME as to whether the evidence supported a finding that Schoenfeld met or equaled any listed impairment. (R. 24, 36-37); Steward v. Covlin, 2015 WL 1116815, at *8 (N.D. Ill. March 10, 2015).

Schoenfeld has not cited to any evidence that contradicts these opinions that Schoenfeld's back and heart impairments do not satisfy or equal a listed impairment. Scheck, 357 F.3d at 701 (holding when a claimant fails to present evidence to contradict state agency physician opinions that plaintiff does not meet listing, remand is unnecessary even if the ALJ provides only a perfunctory analysis of the listing issue). Because Schoenfeld has not shown what contradictory evidence the ALJ failed to consider at step three, the ALJ's step three determination is affirmed.

### B. Weight of Opinion Evidence

Schoenfeld challenges the ALJ's treatment of the medical opinions. Specifically, Shoenfeld argues that the ALJ erred in giving "significant weight" to the opinions of non-examining state agency reviewing physicians, Drs. Gotanco and Madala, and medical expert, Dr. Stevens, but only "little weight" to that of his treating internist, Dr. Dy. A treating physician's opinion is entitled to controlling weight if it is supported by objective medical evidence and is consistent with other substantial evidence in the record. 20 C.F.R. 404.1527(c)(2). "Obviously if [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obviously, once well-supported contradictory evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). At that point, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." Id. at 377. Where conflicting opinion evidence exists, "it is up to the ALJ to decide which doctor to believe–the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases–subject only the requirement that the ALJ's decision be supported by substantial evidence." Micus v. Bowen 979 F.2d 602, 608 (7th Cir. 1992).

If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining the weight to give the opinion, including the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the degree to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and whether the opinion was from a specialist. 20 C.F.R. § 416.927(c)(1)-(6). This "checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence. When he has decided how much actual weight to give it, there seems no room for him to attach a presumptive weight to it." Hofslien, 439 F.3d at 377.

Here, the ALJ found that Schoenfeld has the residual functional capacity to perform light work except that he is limited to frequent handling, can only occasionally balance, stoop, kneel, crouch, and crawl, can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, can occasionally reach overhead, and must avoid concentrated exposure to hazards, temperature extremes, and humidity. (R. 19). Schoenfeld argues that the RFC is not supported by substantial evidence in part because the ALJ should have given controlling weight to the opinion of Schoenfeld's treating internist, Dr. Dy.[1] The Court finds no error in the ALJ's handling of the opinion evidence.

The ALJ discussed Dr. Dy's opinion in detail in his analysis. (R. 23). On July 2, 2013, Dr. Dy completed a "Medical Assessment of Condition and Ability to do Work-Related Activities" for Schoenfeld. (R. 522-525). Dr. Dy stated that Schoenfeld suffers from basilar headaches, status post cervical fusion, and lumbar degenerative disc disease. (R. 522). Dr. Dy explained that he had been treating Schoenfeld since 2010. Id. In response to the question asking "[w]hat medical

---

[1] Schoenfeld also points out that on May 28, 2013, his treating orthopedic surgeon, Dr. Ronjon Paul, restricted him to lifting no more than eight pounds. (R. 527). As the ALJ noted, on July 22, 2013, Dr. Paul's office wrote that "[a]t this time [Schoenfeld] has no restrictions on lifting." (R. 22, 601). Substantial evidence supports the ALJ's conclusion that Dr. Paul's temporary lifting limitation was not entitled to controlling weight.

-7-

evidence exists relative to each condition, describing all observations, symptoms, history, tests, and course of treatment," Dr. Dy cited to MRIs of Schoenfeld's cervial and lumbar spine.  Id.  Dr. Dy wrote that Schoenfeld's prognosis was poor for his lumbar spine, fair for his cervical spine, and unclear for his headaches as he was being referred to a neurology specialist for a follow-up.  Id..  Dr. Dy acknowledged that Schoenfeld's March 14, 2013 cervical spine fusion had alleviated his arm tingling and numbness.  Id.  Dr. Dy concluded that Shoenfeld can sit, stand, or walk four hours out of an eight hour workday; should elevate his feet hip high while sitting to decrease pressure on disc; needs to lie down intermittently throughout the day to relieve back pain; can occasionally lift nine pounds and can frequently lift five pounds; can carry what he lifts one hundred feet; and has a fifty percent limitation for bending, pushing, or pulling.  (R. 523).  Dr. Dy noted that the side effect of Schoenfeld's medication is sedation which would further diminish his ability to walk, stand, or sit upright.  (R. 524).  Dr. Dy opined that Schoenfeld would have marked limitation in his ability to complete a normal workday and workweek without interruptions from symptoms related to his conditions and a marked limitation in his ability to perform at a consistent pace without an unreasonable number and length of rest periods due to symptoms related to his conditions.  Id.  Dr. Dy also opined that Schoenfeld would experience significant deficiencies in sustained concentration, persistence and pace due to symptoms related to his conditions.  Id.  Finally, Dr. Dy indicated that Schoenfeld's severe symptoms and limited restrictions were present since July 1, 2012.  Id.

The ALJ gave proper justifications for not according controlling weight to Dr. Dy's opinion. First, the ALJ discounted the opinion of Dr. Dy because it was inconsistent other evidence in the record which showed improvement. (R. 23). In particular, the ALJ noted that on July 22, 2015, the same month as Dr. Dy's opinion, an exam showed essentially normal findings and Schoenfeld had "no restrictions on lifting." (R. 23, 599-603). The ALJ is entitled to discount a treating physician's opinion based on inconsistency between the described limitations and the actual treatment records. 20 C.F.R. 404.1527(c); Skarbek, 390 F.3d at 503-04.

Second, the ALJ noted that Dr. Dy's July 2, 2013 opinion was rendered only a few months after Schoenfeld's neck surgery, recognizing that immediately after his March 14, 2013 cervical spine fusion surgery he was more limited. The ALJ's recognition that Schoenfeld was more limited in the months immediately following his cervical spine fusion surgery is well-founded. The medical records from Schoenfeld's treating orthopedic surgeon (Dr. Paul) show Schoenfeld's later improvement and they do not support the significant restrictions provided for in Dr. Dy's opinion. As the ALJ noted, Schoenfeld returned to his treating orthopedic surgeon's office for a follow-up on July 22, 2013 and reported no more pain or numbness in his left hand. (R. 22, 600). Normal examination findings were also reported. In particular, deep tendon reflexes were intact and 2/4 throughout bilateral upper extremities, there was 5/5 strength throughout Schoenfeld's upper extremities except for his left triceps which was 4+/5, Schoenfeld was able to normal heel and toe walk, and Schoenfeld had normal sensation to light touch and pressure throughout his bilateral upper extremities. (R. 601). Schoenfeld was directed to finish physical therapy and he had "no restrictions on lifting." Id. Approximately two months after Dr. Dy's opinion, on September 10, 2013, Schoenfeld was seen by his orthopedic surgeon's office. Schoenfeld reported "feeling good" and being "pleased overall." (R. 596). There were again normal findings for Schoenfeld's gait, heal-and-toe walk, deep tendon reflexes, upper extremity strength except 4+/5 bilateral shoulder external rotation, and sensation. (R. 597). Schoenfeld was directed to return in six months with no restrictions. Id.

Third, the ALJ stated that Dr. Dy's opinion appeared to be based heavily on Schoenfeld's subjective complaints. (R. 23). "[W[]here a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." Bates v. Colvin, 736 F.3d 1093, 1100 (7th Cir. 2013); Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ's assessment of Dr. Dy's opinion being based primarily on Schoenfeld's subjective complaints is supported by substantial evidence The language of Dr. Dy's office visit notes of July 2, 2013 implies that he based his opinion

on Schoenfeld's self-reported symptoms. For example, Dr. Dy wrote, "Pt applying for d/a now, feels unable to perform his job as an electronics technician.. Unable to lift >10 lbs d/t neck pain and severe djd dz causing lbp . . . . Will complete form for ss d/a." (R. 606). These statements indicate that Dr. Dy accepted Schoenfeld's opinion that his is disabled instead of Dr. Dy's opinion being based on objective observations. Dr. Dy's opinion was not supported by his treatment notes. There is no mention of any objective findings during the July 2, 2013 examination that would support the severity of Dr. Dy's restrictions. (R. 605-607). Dr. Dy's three prior treatment notes from April 3, 2013, May 1, 2013, and May 22, 2013 contain no mention of a lifting restriction or other severe functional limitations. (R. 522-558). Because the ALJ adequately explained his decision to give little weight to Dr. Dy's opinion, he did not commit reversible error.

Schoenfeld also claims that the ALJ did not explicitly refer to the regulatory factors required under 20 C.F.R. § 404.1527(c) when he declined to afford Dr. Dy's opinion controlling weight. The relevant inquiry is "whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527(c)" and "build an 'accurate and logical bridge' between the evidence and his conclusion." Schreiber v. Covlin, 519 Fed.Appx. 951, 969 (7th Cir. March 27, 2013). The ALJ met this standard. The ALJ explicitly identified Dr. Dy as an internist in his decision. (R. 21). The ALJ's decision demonstrates that he was aware of and described the length, nature, and extent of Dr. Dy's treating relationship with Schoenfeld, the frequency of Dr. Dy's examinations, and the types of tests performed. The ALJ noted that Schoenfeld saw Dr. Dy on July 23, 2012, January 17, 2013, April 3, 2013, May 22, 2013, and July 2, 2013. (R. 21, 22). The ALJ also considered Dr. Dy's written opinion, which states that Dr. Dy had been seeing and treating Schoenfeld since 2010. (R. 23, 522). The ALJ's decision describes the MRIs of Schoenfeld's cervical and lumbar spine from August 7, 2012 and December 6, 2012 referred to in Dr. Dy's opinion. (R. 20, 21, 522). The ALJ also considered the consistency of Dr. Dy's opinion with the record and the supportability of his opinion. The ALJ noted that Dr. Dy's opinion was rendered only a few months after Schoenfeld's neck surgery, when he still continued

to improve. (R. 23). The ALJ found Dr. Dy's opinion to be inconsistent with other medical evidence from Schoenfeld's treating orthopedic surgeon during the same month of Dr. Dy's opinion which showed essentially normal findings and no lifting restrictions. Id. The ALJ also properly concluded that Dr. Dy's opinion may have been based on Schoenfeld's subjective complaints. Id. Under the circumstances here, the ALJ indirectly and sufficiently accounted for the regulatory factors dictating how an ALJ must weigh a treating physician's opinion through his review and discussion of Dr. Dy's treatment notes and opinion.

The ALJ gave significant weight to the RFC assessments of two state agency physicians (Drs. Gotanco and Madala) who reviewed the record in May and September, 2013 and opined that Schoenfeld was capable of lifting, carrying, pushing, and pulling ten pounds frequently and twenty pound occasionally; sitting, standing and/or walking about six hours in an eight-hour workday; occasionally climbing ladders, ropes, scaffolds, ramps, and stairs; occasionally kneeling, crouching, and crawling; and no more than frequent gross manipulation. (R. 23, 60-66, 73-79). The ALJ reasonably relied on Drs. Gotanco's and Madala's opinions in assessing Schoenfeld's residual functional capacity because they were "consistent with the medical evidence" and they have "specialized knowledge of the rules and regulations of the Social Security Administration." (R. 23); Fiener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004) (holding an ALJ may rely on opinions from state agency physicians); 20 C.F.R. § 404.1527(e)(2)(i) (stating "state agency medical and psychological consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.").

In addition, the gave significant weight to the ME's testimony and opinion in finding that Schoenfeld could perform light work. (R.24, 37). Dr. Stevens determined that Shoenfeld could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and/or walk for six hours in an eight-hour workday; should never climb ladders or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; could occasionally perform

bilateral overhead reaching; should avoid concentrated exposure to temperature extremes and humidity; should have no more than moderate exposure to uneven terrain, and could not do commercial driving. Id. The ALJ properly relied on Dr. Stevens' opinion because it was "generally consistent with the medical evidence of record and Dr. Stevens is a qualified, impartial expert who had the opportunity to review an expanded record." (R. 24); Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001) (holding an ALJ may rely on medical expert testimony in making a disability determination); see also 20 C.F.R. § 404.1527(e)(2)(iii) (stating "[a]dministrative law judges may also for ask and consider opinions from medical experts on the nature and severity of your impairment(s) . . . .").

Because the ALJ's rationale for not affording Dr. Dy's opinion controlling weight and giving significant weight to the state agency physicians' and ME's opinions is supported by substantial evidence, the Court concludes that the ALJ properly weighed the opinion evidence of record. The ALJ also adequately considered the relevant regulatory factors.

### C. RFC Determination

Schoenfeld next argues that the ALJ failed to account for all of Schoenfeld's limitations in his RFC assessment, such as deficiencies in concentration, persistence and pace resulting from Schoenfeld's headaches as well as the severity of his degenerative disc disorders. When determining residual functional capacity, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009). However, a determination "need not contain 'a complete written evaluation of every piece of evidence.'" McKinzey v. Astrue, 641 F.3d 884, 891 (7th Cir. 2011).

Here, the ALJ adequately addressed Schoenfeld's headaches. At step two, the ALJ determined that Schoenfeld's headaches were a non-severe impairment, i.e., an impairment that

does not significantly limit Schoenfeld's ability to work, a finding not specifically challenged on appeal. (R. 19). The ALJ noted that Schoenfeld testified that he has constant headaches that make it difficult for him to concentrate. (R. 20). In his decision, the ALJ noted that on July 23, 2012, January 17, 2013, April 3, 2013, and May 22, 2013, Schoenfeld specifically denied having headaches. (R. 21, 22, 425, 555, 615, 663). The ALJ wrote that on July 2, 2013, Dr. Dy diagnosed Schoenfeld with basilar headaches and referred him to a neurology specialist. (R. 22, 522). The ALJ noted that Dr. Dy opined that Schoenfeld would have marked limitation in his ability to perform at a consistent pace without an unreasonable number and length of rest periods due to symptoms related to his conditions and he would experience significant deficiencies in sustained concentration, persistence and pace due to symptoms related to his conditions. (R. 23, 524). The ME correctly testified that there was limited recent evidence of headaches (Exhibit 13--three visits to Dr. Cheng, a neurologist, between July 11, 2013 and September 19, 2013) but there was no medical evidence of headaches throughout the record. (R.36, 38-39, 569-586). The ME testified that basilar headaches could limit concentration but do not find that Schoenfeld's headaches caused concentration difficulties. (R. 39). The ALJ gave significant weight to the opinion of the ME. As discussed above, the ALJ properly credited the ME's testimony. The Court finds that the ALJ properly accounted for the medical evidence regarding Schoenfeld's headaches. The ALJ's rejection of concentration limitations due to the ME's testimony is supported by substantial evidence.

Regarding his degenerative disc disease, Schoenfeld does not indicate any specific functional limitations that the ALJ should have included in his RFC finding. (Docs. 15 at 13, 24 at 7). Schoenfeld states only that the ALJ "did not account for the debilitating and incapacitating effects of Plaintiff's degenerative disc disorders" and simply refers the Court generally to his memorandum's discussion of the weight given to the opinion evidence. (Doc. 15 at 13). Because Schoenfeld has not shown precisely why the ALJ's RFC determination failed to account for all of Schoenfeld's back limitations, a remand is not warranted on this ground.

### D. Credibility Finding

Schoenfeld also challenges the ALJ's credibility assessment. The ALJ found that Schoenfeld's statements concerning the limiting effects of his symptoms were not entirely credible. (R. 20). If an ALJ finds that a medical impairment exists that could be expected to produce a claimant's alleged condition, he must then assess how the individual's symptoms affect his ability to work. SSR 96-7p. The fact that a claimant's subjective complaints are not fully substantiated by the record is not a sufficient reason to find that he is not credible. The ALJ must consider the entire record and "build an accurate and logical bridge from the evidence to his conclusion." Clifford, 227 F.3d at 872. In determining the credibility of a claimant, the ALJ is required to consider the overall evidence, including the objective medical evidence, the claimant's daily activities, allegations of pain, any aggravating factors, the types of treatment received, any medications taken, and functional limitations. Schreiber, 519 Fed. Appx. at 960; see also 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. A court reviews an ALJ's credibility decision with deference and overturns it only when the assessment is patently wrong. Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010).

The ALJ acknowledged Schoenfeld's testimony that he has pain shooting down his right arm and pain in his lower back that shoots down his left leg. (R. 20). The ALJ noted that Schoenfeld alleges difficulties sitting, standing, walking, lifting, bending, squatting, reaching, kneeling, climbing stairs, using his hands, remembering, concentrating, and following instructions. Id. The ALJ also noted that Schoenfeld reported being able to walk one city block but then he must rest fifteen minutes and being able to stand for a half an hour but then he gets burning in his lower back and must lay down and elevate his feet. Id. The ALJ considered Schoenfeld's testimony that he must lay down every half hour for ten minutes. Id.

Schoenfeld argues that the ALJ overemphasized his daily activities and impermissibly equated his ability to engage in daily activities with the ability to engage in full-time work. The

-14-

Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work." Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016). Here, the ALJ did not place undue weight on Schoenfeld's activities of daily living. The ALJ permissibly considered Schoenfeld's activities as one factor that weighed against his account of disabling limitations. Id. The ALJ conceded that Schoenfeld stated that it is difficult to perform his activities of daily living, but also emphasized that in February 2013, Schoenfeld stated that he did not require assistance. Id. The ALJ noted that Schoenfeld can prepare simple meals, feed himself, drive, go out unaccompanied, and shop in stores for necessities. (R. 24, 223-224, 268-269). Shoenfeld contends that the ALJ erred by not mentioning that on September 2, 2013, Schoenfeld reported that he: (1) needs helps getting dressed and has problems reaching himself; (2) he cannot lift pots or bend to put things in the oven and his wife makes his meals; (3) when his wife is not home, he makes frozen dinners or eats leftovers; (4) he cannot do any household chores; (5) he cannot remember to take his medication without the help of a pill caddy and alarms on his phone; (6) he goes outside twice a week and can drive but not for long; (7) his wife handles the money; (8) he no longer goes anywhere on a regular basis; (9) once a week, he may get a phone call from a friend or a visit from his son; and (10) he has missed family functions. (Doc. 15 at 14).

The ALJ cited to the evidence referred to by Schoenfeld, indicating that it was considered, but the ALJ reasonably found that Schoenfeld was not a limited as he claimed. (R. 20 and 24 citing to Exhibit 13E). The ALJ properly relied on objective medical evidence and other evidence that sufficiently contradicted the credibility of Schoenfeld's claim of disability. The ALJ summarized Schoenfeld's treatment for his back conditions. The ALJ recognized that immediately after his March 14, 2013 neck surgery, Shoenfeld was more limited but that he "achieve[d] some improvement from surgery." (R. 24). The ALJ noted that on July 22, 2013, Shoenfeld's treating orthopedic surgeon stated that he had "no restrictions on lifting." (R. 22, 23, 601). On examination that day, Schoenfeld had normal strength in his upper extremities except for left triceps which was

4+/5, intact sensation to light touch and pressure, his deep tendon reflexes were intact for the upper extremities and 2/4 throughout, his gait was non-antalgic, and he was able to normal heal-and-toe walk. (R. 601). Additionally, the ALJ noted that on September 10, 2013, just eight days after Schoenfeld's above description of severely limited daily activities, Schoenfeld told his treating orthopedic surgeon that he "was feeling good" and was "pleased overall." (R. 22, 596). Schoenfeld's examination that day showed essentially normal findings with normal strength in his upper extremities except for bilateral shoulder external rotation which was 4+/5, intact sensation to light touch and pressure, deep tendon reflexes were intact for the upper extremities and 2/4 throughout, gait was non-antalgic and normal heal-and-toe walk. (R. 22, 597). On March 12, 2014, Schoenfeld's treating orthopedic surgeon wrote that Schoenfeld had some pain in his arms and neck but had "done well with his preoperative pain." (R. 588). Schoenfeld's treating orthopedic surgeon placed no permanent restrictions on Schoenfeld's activities. The ALJ also gave significant weight to the medical expert's opinion who found that Schoenfeld's back and heart conditions did not preclude him from working. (R. 24). The ALJ gave significant weight to the state agency physician consultants who opined that Schoenfeld could perform light work. (R.23). Accordingly, Schoenfeld has not shown that the credibility determination is patently wrong with respect to Schoenfeld's activities of daily living.

Schoenfeld contends that the ALJ failed to address the side effects of his medications. An "ALJ is not required to make specific findings concerning the side effects of prescription drugs on the claimant's ability to work." Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994); Nelson v. Sec'y of Health and Human Servs., 770 F.2d 682, 685 (7th Cir. 1985). The ALJ's decision here demonstrates that he was aware of and considered the side effects of Schoenfeld's medications. Schoenfeld testified that his medications make him tired. (R. 45-46). The ALJ noted that Dr. Dy wrote that the "side effect of the claimant's medication is sedation which would further diminish his ability to sit, stand, or walk." (R. 23). The Courts finds no error in the ALJ's consideration of the side

-16-

effects of Schoenfeld's medications.

Finally, Schoenfeld urges in an undeveloped argument that the ALJ erred in failing to consider his strong work history. (Doc. 15 at 13). A "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Hill v. Colvin, 807 F.3d 862, 868 (7th Cir. 2015). "But work is just one factor among many, and it is not dispositive." Loveless, 810 F.3d at 508. An ALJ's silence with respect to a claimant's work history does not require reversal when the credibility determination is otherwise supported by substantial evidence. Id. Because the ALJ's credibility finding is otherwise supported by substantial evidence, the ALJ's failure to mention Schoenfeld's work history does not render the credibility determination patently wrong.

## III. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment [14] is denied and the Commissioner's Motion for Summary Judgment [22] is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Bruce Schoenfeld.

**E N T E R:**

*[signature: Daniel G. Martin]*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: March 8, 2016**